IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL JAMES RAYNOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-105-AMG |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Paul Raynor ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for supplemental security income ("SSI"). (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 7), and the parties have fully briefed the issues. (Docs. 17, 23, 24).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 12). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

**I.     Procedural History**

Plaintiff filed an application for SSI on September 4, 2020, alleging a disability onset date of October 2, 2018. (AR, at 101). The SSA denied the application initially and

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

on reconsideration.  (*Id*. at 115, 135).  An administrative hearing was held on June 8, 2022. (*Id*. at 42-72).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (*Id*. at 7-35).  The Appeals Council denied Plaintiff's request for review.  (*Id*. at 1-6).  Thus, the ALJ's decision became the final decision of the Commissioner.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**II.   The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. § 416.921; *see id*. §§ 416.902(a), 416.913(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted) (reaffirming "the use of our usual review standards when considering allegations that an ALJ failed to comply with an Appeals Council remand order."). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

### III. The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 4, 2020, the application date. (AR, at 12). At Step Two, the ALJ found that Plaintiff had the severe physical impairment of degenerative disc disease. (*Id*.) At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 18). The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except occasionally climbing ramps or stairs; never climbing ladders, ropes or scaffolds; frequently balancing; and occasionally stooping, kneeling, crouching or crawling.

(*Id*. at 19). Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work. (*Id*. at 27). At Step Five, however, the ALJ found when "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" such as a sales attendant, a small products assembler, or a cafeteria attendant. (*Id*. at 28). Thus, the ALJ found that Plaintiff had not been under a disability since September 4, 2020. (*Id*. at 29).

### IV. Claim Presented for Judicial Review

Plaintiff raises one point of error on appeal: that "the ALJ's assessment of [Plaintiff's] residual functional capacity was legally flawed and not supported by substantial evidence." (Doc. 17, at 8). He asserts that the ALJ "improperly minimiz[ed] the impact of his bilateral foot deformities, fail[ed] to accurately describe the observations

of his gait, and fail[ed] to address the full extent of his March 2021 consultative physical examination findings while also being factually unreasonable given the evidence as a whole, . . . ." (*Id*. at 9). In response, the Commissioner argues that "substantial evidence supports the ALJ's findings" and the Court should affirm. (Doc. 23, at 1).

## V.  The ALJ's Formulation of the RFC Is Supported By Substantial Evidence.

At Step Two, the ALJ found that Plaintiff had the severe physical impairment of degenerative disc disease as well as the medically determinable but nonsevere physical impairments of small knee effusion of the right knee, bilateral heel spurs, insomnia, seasonal allergies, acute bronchitis, gastroesophageal reflux disease, and skin lesions. (AR, at 12-13). The ALJ noted that he "considered all [Plaintiff's] impairments, severe and nonsevere, singly and in combination, in reaching the residual functional capacity herein." (*Id*. at 13).[3]

---

[3] Plaintiff appears to argue that the ALJ erroneously determined that his bilateral heel spurs were nonsevere at Step Two. (Doc. 17, at 9-10). However, Plaintiff does not further develop this argument and therefore the court declines to entertain it. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner . . . are waived."); *Harper v. Astrue*, 2012 WL 2681292, at *7 (N.D. Okla. July 6, 2012), (finding that plaintiff's arguments were "perfunctory and undeveloped to the point that this Court cannot give them meaningful review, and therefore, pursuant to *Wall* [*v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009)], a finding that these arguments have been waived is appropriate"), *aff'd sub nom. Harper v. Colvin*, 528 F. App'x 887 (10th Cir. 2013). Nevertheless, because the ALJ found that Plaintiff had the severe impairment of degenerative disc disease, any error in finding that Plaintiff's bilateral heel spurs were nonsevere was harmless. *See Cabe v. Saul*, 2021 WL 1225885, at *2 (W.D. Okla. Mar. 31, 2021) ("If an ALJ deems at least one impairment severe and proceeds to the remaining steps of the evaluation, any error at step two in failing to deem a certain impairment severe is considered harmless.") (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence")).

At Step Four, the ALJ discussed various pieces of evidence in support of his RFC determination. (AR, at 20-27). First, the ALJ considered Plaintiff's function reports wherein he alleged "general difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, [and] stair climbing" as physical limitations. (*Id*. at 20). The ALJ further considered the testimony of Plaintiff at his hearing, including about his part-time work in 2019 "doing general painting and clean up;" that he "needs surgery on his foot, but it was put off due to Covid-19;" and that following his previous lumbar spine fusion and left knee surgery he "hasn't had any further treatment" or "undergone any further physical therapy" and is treated with the medication gabapentin. (*Id*.) He noted Plaintiff's testimony that he wears a knee brace, that he "tries to walk frequently and can walk about a block and a half comfortably," and that he is able to "stand for 30 minutes to an hour (not in one place) before he would need to sit down." (*Id*.) The ALJ considered Plaintiff's testimony regarding his daily activities, including his ability to "shower and dress himself; prepare meals; [and] do some grocery shopping," and noted his use of a walking stick "about 3 times per week" and that this "was not prescribed by a physician." (*Id*. at 20-21). Finally, he noted Plaintiff's testimony regarding his constant back pain. (*Id*. at 21). However, "[a]fter careful consideration of the evidence," the ALJ went on to find that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of Plaintiff's symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." (*Id*.)

The ALJ then extensively discussed the medical evidence of Plaintiff's physical limitations and contrasted Plaintiff's subjective allegations with mild to normal findings

upon examination and in imaging reports, Plaintiff's limited and conservative treatment, and Plaintiff's successful use of medication to alleviate his pain, consistent with his own testimony. (*Id*. at 21-25). Specifically regarding Plaintiff's nonsevere bilateral foot deformities, the ALJ discussed Plaintiff's September 2020 exam by orthopedic surgeon David Sparks, wherein Dr. Sparks noted "large posterior Haglund's deformities extremely tender to palpation, very prominent with overlying callus changes to the skin, and equinovarus cavus deformities as well of midfoot" and recommended Plaintiff "undergo an excision." (*Id*. at 23) (citing AR, at 500-502).

With regard to Plaintiff's gait, the ALJ discussed a November 2019 exam by neurologist Benjamin White noting Plaintiff's "gait was antalgic favoring the left leg" but he "had good strength, bulk and tone to confrontational testing in his hip flexion, knee extension, plantar and dorsiflexion" and "could stand on his heels and toes without difficulty." (*Id*. at 22). The ALJ further considered a January 2020 exam by Dr. White noting Plaintiff "is walking without assistance." (*Id*.) He also discussed the March 2021 consultative exam by Kathryn Clarkson, APRN, noting "a right limp with slow antalgic gait." (*Id*. at 24).

Finally, although Plaintiff complains that the ALJ "fail[ed] to address the full extent of his March 2021 consultative physical examination findings," (Doc. 17, at 9), he concedes, accurately, that the ALJ "acknowledge[ed] Nurse Clarkson's abnormal findings noted in the narrative report of her March 2021 consultative physical examination, (*id*. at 11). (*See* AR, at 24). To the extent Plaintiff challenges that the ALJ "failed to mention some additional findings noted in the pages accompanying Nurse Clarkson's narrative

report," (Doc. 17, at 11), the ALJ was "not required to discuss every piece of evidence," and the record reflects that the ALJ properly "considered all of the evidence." *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The ALJ concluded:

> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms, I find they are not entirely consistent with the longitudinal record of evidence documenting mild to benign physical exams and conservative treatment of same. Moreover, such significant limitations are not consistent with [Plaintiff's] ability to engage in nearly all his daily activities of living. For example, he has reported significant limitations in lifting, standing/walking, sitting and postural movement; however, in September 2019, [Plaintiff] was able to work for a few months doing manual labor such as painting and clean up. While I find it somewhat reasonable that he was not able to continue doing that work that associated with his impairments, I also find his ability to engage in those activities at all would be inconsistent with such significant limitations, as alleged herein, including using a walking stick 3 times per week. Objective observations often noted he was able to ambulate without an assistive device. Moreover, his treatment has been conservative with minimal pain management via prescriptions like gabapentin. He has not required any more physical therapy or injections. Thus, I find the residual functional capacity herein adequately addresses [Plaintiff's] impairments as reasonably supported by the longitudinal record of evidence.

(*Id*. at 25-26).

Plaintiff's sole proposition of error is that, in formulating the RFC, the ALJ "improperly minimize[ed] the impact of [Plaintiff's] bilateral foot deformities, fail[ed] to accurately describe the observations of his gait, and fail[ed] to address the full extent of his March 2021 consultative physical examination findings while also being factually unreasonable given the evidence as a whole, . . . ." (Doc. 17, at 8-9). In making his argument, Plaintiff points to evidence that the ALJ did, in fact, consider and discuss, but he simply argues that the ALJ should have reached a different conclusion. Plaintiff now

9

asks the Court to reconsider this same evidence and reach a different conclusion. Plaintiff's request that the Court remand on that basis is nothing more than a request to reweigh the evidence, and this Court must decline that request. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("Concluding otherwise would require us to reweigh the evidence, a task we may not perform."). "The ALJ was entitled to resolve [ ] evidentiary conflicts and did so." *Id.* Indeed,

> [t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citations and quotation marks omitted). The ALJ provided a narrative discussion citing specific medical and non-medical evidence in support of the RFC that well exceeds the substantial evidence standard. *See* SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations.")). Accordingly, the Commissioner's decision should be affirmed.

## VI.   Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 9th day of February, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE